**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

In re:

        Lawrence V. Otway,

                  Debtor.

**NOT FOR PUBLICATION**

Chapter 11

Case No. 21-12140 (MG)

## MEMORANDUM OPINION AND ORDER GRANTING MOTION TO LIFT THE AUTOMATIC STAY

*A P P E A R A N C E S:*

LAMONICA HERBST & MANISCALCO, LLP
*Attorney for Interim Ch. 7 Trustee of 78-80 St. Mark's Place, LLC*
3305 Jerusalem Avenue, Suite 201
Wantagh, New York 11793
By:    Holly R. Holecek, Esq.


ADVOCATES FOR JUSTICE, CHARTERED
*Attorneys for Lawrence v. Otway, Debtor*
275 Seventh Avenue, Suite 1760
New York, New York 10001
By:    Arthur Z. Schwartz, Esq.
          Eugenie Otway, Esq., of counsel


MINTZ & GOLD, LLP
*Attorneys for 78-80 St. Mark's Place, LLC*
600 Third Avenue, 25th Floor
New York, New York 10016
By:    Andrew R. Gottesman, Esq.


KATSKY KORINS LLP
*Attorneys for St. Mark's Mixed Use, LLC.*
605 Third Avenue
New York, New York 10158
By:    Steven H. Newman, Esq.

**MARTIN GLENN**
**CHIEF UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is the motion of Marianne T. O'Toole, Esq. ("O'Toole"), filed in her capacity as the interim chapter 7 Trustee ("78-80 Trustee") of the estate of 78-80 St. Marks Place, LLC (the "78-80 Debtor") for an order for relief from the automatic stay. ("Motion," ECF Doc. # 27.) O'Toole was appointed as the chapter 11 Trustee of the 78-80 Debtor on May 24, 2022, and she was later appointed as the interim chapter 7 trustee of the 78-80 Debtor when the chapter 11 case was converted to a case under chapter 7 on July 25, 2022.

The 78-80 Trustee seeks relief from the automatic stay pursuant to section 362 of the Bankruptcy Code in order to commence an adversary proceeding against Lawrence V. Otway a/k/a Lorcan Otway, the debtor and debtor-in-possession ("Otway," or the "Debtor"), and his companies to: (1) compel the turnover of possession of the property of the 78-80 Debtor's estate to the 78-80 Trustee and (2) seek money judgments in an amount to be determined at trial for the use and occupancy of the property through the date of turnover of possession. ("Proposed Complaint," ECF Doc. # 27-3.) The objection deadline was September 15, 2022. (ECF Doc. # 28.) The Debtor filed an *untimely* opposition ("Opposition," ECF Doc. # 31) on September 20, 2022. The 78-80 Trustee filed a reply to the Opposition ("Reply," ECF Doc. #36) on September 21, 2022.

For the reasons discussed below, the Court **GRANTS** the Motion.

## I.    <u>BACKGROUND</u>

On December 29, 2021 (the "Filing Date"), Otway filed this chapter 11 case, in which he is the Debtor, and he also filed a chapter 11 case for 78-80 St. Marks Place, LLC (Case No. 21-12139 (MG)), an entity wholly owned by him. (*See Order Directing the Appointment of a*

*Chapter 11 Trustee*, Findings of Fact and Conclusions of Law, ECF Doc. # 58 ¶ 3, Case No. 21-

12139 (hereinafter "Order Directing Appointment of Chapter 11 Trustee").)[1]  Those findings of

fact and conclusions of law are expressly incorporated herein.

That Order recounts the history Otway's ownership of the 78-80 Debtor and of the

businesses (also owned by Otway) that have been occupying substantial portions of the property.

The 78-80 Debtor's primary asset is a mixed-use property located at 78-80 St. Marks Place, New

York, New York 10003 (the "Property").  (Motion ¶ 12.)   The Order recounts the secured

financing in place regarding the Property (the "Secured Loan").

Otway is the sole member of the 78-80 Debtor.  The 78-80 Trustee was appointed as the

chapter 11 Trustee for the 78-80 Debtor on May 24, 2022, and she moved to convert the 78-80

Debtor's case to one under chapter 7 of the Bankruptcy Code on June 17, 2022.  (*Id.* ¶¶ 8, 10.)

By Order dated July 25, 2022, the Court converted the 78-80 Debtor's case to a case under

chapter 7 of the Bankruptcy Code.  (*Id.* ¶ 10.)

As set forth in ¶¶ 5 and 6 of the Order Directing Appointment of Chapter 11 Trustee,

"[o]n November 12, 2019, Mr. Otway personally guaranteed the [78-80] Debtor's obligations

under the Loan ('Guarantee'), and also executed a Pledge and security Agreement ('Pledge

Agreement') in favor of the Original Creditor.  Pursuant to the Pledge Agreement, Mr. Otway

pledged to the Original Creditor all of his rights, title and interests in, to and under his

membership interests in the Debtor (the 'Pledged Collateral').  The Original Creditor perfected

its security interest in the Pledged Collateral by taking possession of the certificate of

membership interests in the Debtor ('Certificated Interests') and filing UCC-1 financing

---

[1]    The Order Directing the Appointment of the Chapter 11 Trustee includes findings of fact and conclusions
of law, equally applicable in this case since Otway fully participated in and is bound by the findings in that case.

statements" (internal citations omitted). The assignee and current holder of the Secured Loan is St. Mark's Mixed Use LLC ("Lender"). The Secured Loan matured on December 1, 2020; it was not paid at maturity or at any time thereafter. The 78-80 Debtor has not made any loan payments or payments of real estate taxes in several years. The amount due on the Loan now is approximately $10 million.

The chapter 11 Trustee was appointed because of the 78-80 Debtor's substantial and continuing losses, the failure to pay post-petition real estate taxes, and the failure of the 78-80 Debtor to establish a reasonable likelihood that a plan would be confirmed in a reasonable time. The case was then converted to a case under chapter 7 on the motion of the chapter11 Trustee because the Debtor was generating insufficient funds to operate and maintain the property and conversion was in the best interests of the Debtor's estate and all creditors of the estate. The goal of the 78-80 Trustee remains to sell the property and maximize the recovery for all creditors. It is doubtful, at best, that Otway retains any economic interest in the 78-80 Debtor. Before and after the appointment of the chapter 11 Trustee and the conversion of the case to a case under chapter 7, Otway has done all he can do to frustrate the efforts of the 78-80 Trustee to carry out her responsibilities. He and his businesses refuse to vacate the property even though they have acknowledged that they have no leases to occupy the Property.

A.      **Property at Issue**

The 78-80 Debtor's primary asset is a mixed-use property located at 78-80 St. Marks Place, New York, New York 10003 (the "Property"). (Motion ¶ 12.) The Debtor currently resides at the Property with his non-debtor spouse, Eugenie Otway, who has now appeared *of counsel* in connection with the Motion. (*Id.* ¶ 13.) The Debtor's companies—Scheib's Place, Inc. d/b/a William Barnacle Tavern, Exhibition Of The American Gangster, Inc., and Theatre 80,

3

LLC (collectively, the "Debtor's Companies" or "Companies")—have principal places of business and/or operate out of the Property. (*Id.* ¶ 13.)

On December 7, 2020, the Lender sent to the 78-80 Debtor and the Debtor a letter notifying them of an Event of Default for failure to repay the indebtedness within 5 days of the December 1, 2020 maturity. (*Id.*) On January 14, 2021, the 78-80 Debtor, the Debtor, Eugenie Otway, and the Debtor's Companies (collectively, the "Tenants") entered into a Forbearance Agreement with the Lender. (Motion ¶ 14.) *The Forbearance Agreement provided for the termination of all leases between the Debtor, Eugenie Otway, and the Debtor's Companies as tenants and the 78-80 Debtor as landlord as of June 1, 2021.* (*Id.*) The Tenants agreed to surrender and vacate the Property by July 31, 2021. (*Id.* ¶ 15.) The Forbearance Agreement also gave the Lender the right to foreclose without opposition if the Property was not sold by August 15, 2021. (*Id.*) The property was not sold by this date, and on September 3, 2021, the Lender issued a "Notice of Disposition of Collateral" providing for a public auction on November 18, 2021. (*Id.*)

On November 11, 2021, the Tenants commenced an action (the "State Court Action") against the Lender in the Supreme Court of the State of New York, New York County (the "State Court") and contemporaneously filed a motion seeking to preliminarily enjoin the Lender's auction sale. (Motion ¶ 18.)

On November 29, 2021, all parties to the State Court Action signed a Stipulation of Settlement and Dismissal of Action (the "Consent Order"), which was entered by the State Court and fully resolved the case. (Motion ¶ 19.) The Consent Order acknowledged that all leases between the 78-80 Debtor and the Tenants were terminated and that the Tenants shall completely vacate the Property by December 30, 2021. (*Id.*) The Tenants failed to vacate the property, and

the 70-80 Debtor failed to sell or refinance the Property in accordance with the Consent Order. (*Id.* ¶ 22.)  The Debtor and his companies remain in possession of the Property and are not paying for their continued use of the Property.  (*Id.*)

On December 29, 2021, the day before the deadline for Tenants to vacate the Property, the Debtor filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code in this Court, which imposed an automatic stay of the commencement or continuation of all litigation against the Debtor pursuant to 11 U.S.C. § 362(a)(1).  (Motion ¶ 5.)  It is beyond dispute that the Property is property of the 78-80 Debtor's estate, and the Debtor and his companies have no leases or agreements for their continued occupancy of the property.  (*Id.* ¶¶ 22–23.)

## B.    The Motion

The 78-80 Trustee asserts that she has sufficient cause to be granted relief from the automatic stay under 11 U.S.C. § 362 and should be permitted to commence an adversary proceeding in the 78-80 Debtor's Chapter 7 case against the Debtor and the Debtor's Companies. (Motion ¶¶ 26, 28.)  The 78-80 Trustee submits that the Debtor's and his Companies' continued wrongful possession of the Property devalues the Property and impedes the 78-80 Trustee's ability to liquidate the Property.  (*Id.* ¶ 23.)  The Debtor remains a debtor-in-possession in this case; however, the U.S. Trustee filed a motion on September 21, 2022, to dismiss the case or to convert to a case under chapter 7, which is scheduled to be heard on October 19, 2022.  (ECF Doc. # 35.)  A review of the docket in this case reflects that since the filing of the case on December 29, 2021, the Debtor has *not* filed any operating reports or proposed a plan of reorganization.

### C.    Untimely Opposition

The Debtor filed an untimely Opposition to the 78-80 Trustee's Motion on September 20, 2022.  The Opposition cites New York State COVID-19 business restrictions as a key catalyst to the Debtor's and 78-80 Debtor's financial hardship and ultimate bankruptcy filings.  (Opposition at 8.)  The Opposition advances several arguments that are without legal support, do not substantively address the bankruptcy law at issue in this case, or do not respond to the Motion.

### D.    Reply to Opposition

On September 21, 2022, the 78-80 Trustee filed a Reply to the Opposition.  The 78-80 Trustee asserts that the untimely Opposition is procedurally defective and reiterates her arguments set forth in the Motion.  (Reply at 4–8.)  The Reply also refutes many of the Opposition's allegations, and accurately notes that such allegations are not properly before the Court in this Motion.  (Reply ¶ 14.)

## II.    <u>LEGAL STANDARD</u>

Section 362(a)(1) of the Bankruptcy Code imposes an automatic stay of the commencement or continuation of all litigation against a debtor upon the debtor's filing of a bankruptcy petition.  *See* 11 U.S.C. § 362(a)(1); *In re Project Orange Assocs., LLC*, 432 B.R. 89, 101 (Bankr. S.D.N.Y. 2010).

Section 362(b), in relevant part, provides that the automatic stay does not apply to:

> (10)    any act by a lessor of the debtor under a lease of nonresidential real property that has terminated by the expiration of the stated term of the lease before the commencement of or during a case under this title to obtain possession of such property; or
> . . .
> (22)    the continuation of any eviction, unlawful detainer action, or similar proceeding by a lessor against a debtor involving residential property in which the debtor resides as a tenant under a lease or rental agreement and with respect to which the lessor has obtained before the date of the filing of the bankruptcy petition, a judgment for possession of such property against the debtor[.]

6

11 U.S.C. § 362(b)(10), (22).

Where the automatic stay applies, a party in interest can seek relief from the automatic stay under section 362(d).  Section 362(d)(1), in relevant part, provides:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;

11 U.S.C. § 362(d)(1).

To prevail on a motion to lift the automatic stay under section 362(d), a movant must establish its *prima facie* case that there is cause to lift the stay.  Neither section 362(d)(1) nor the legislative history related thereto defines what constitutes "cause" for relief from the automatic stay.  *In re Touloumis*, 170 B.R. 825, 828 (Bankr. S.D.N.Y. 1994).  "'Cause' is an intentionally broad and flexible concept which must be determined on a case-by-case basis."  *Project Orange*, 432 B.R. at 103 (quoting *In re Brown*, 311 B.R. 409, 412-13 (E.D.Pa. 2004)) (internal citation omitted).  A *prima facie* case that a party lacks adequate protection under 11 U.S.C. § 362(d)(1) can be satisfied by showing (i) a quantitative decline in value of a property, or (ii) that the debtor has failed to make numerous post-bankruptcy payments.  *See In re Elmira Litho, Inc.*, 174 B.R. 892, 902–04 (Bankr. S.D.N.Y. 1994).  The decision whether to grant relief from the automatic stay falls within the discretion of the bankruptcy court.  *Burger Boys, Inc. v. S. St. Seaport Ltd. P'ship* (*In re Burger Boys, Inc.*), 183 B.R. 682, 687-688 (S.D.N.Y. 1994).

Courts in the Second Circuit consider the twelve factors established in the Court of Appeals decision in *Sonnax Industries, Inc. v. Tri-Component Products Corp. (In re Sonnax Indus., Inc.)*, 907 F.2d 1280 (2d Cir. 1990), to determine, on a case-by-case basis, whether relief from the automatic stay is appropriate.  *See, e.g., In re Lehman Bros. Holdings Inc.*, 435 B.R.

122, 138 (S.D.N.Y. 2010*), aff'd sub nom Suncal Cmtys. I LLC v. Lehman Commercial Paper*,

*Inc.*, 402 F. App'x 634 (2d Cir. 2010) ("Sonnax . . . is routinely referenced as the leading relief

from stay precedent in this Circuit.").  The twelve *Sonnax* factors are:

1.  whether relief would result in a partial or complete resolution of the issues;
2.  lack of any connection with or interference with the bankruptcy case;
3.  whether the other proceeding involves the debtor as a fiduciary;
4.  whether a specialized tribunal with the necessary expertise has been established to hear the cause of action;
5.  whether the debtor's insurer has assumed full responsibility for defending it;
6.  whether the action primarily involves third parties;
7.  whether litigation in another forum would prejudice the interests of other creditors;
8.  whether the judgment claim arising from the other action is subject to equitable subordination;
9.  whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor;
10. the interests of judicial economy and the expeditious and economical resolution of litigation;
11. whether the parties are ready for trial in the other proceeding; and
12. impact of the stay on the parties and the balance of harms.

Not all of the *Sonnax* factors are relevant in every case.  *Spencer v. Bogdanovich (In re

Bogdanovich)*, 292 F.3d 104, 110 (2d Cir. 2002) (citing *Mazzeo v. Lenhart (In re Mazzeo)*, 167

F.3d 139, 143 (2d Cir. 1999)).  The Court need not assign equal weight to each factor.  *In re

Keene Corp.*, 171 B.R. 180, 183 (Bankr. S.D.N.Y. 1994).

Alternatively, with respect to real property, a party can move to lift the automatic stay

when a debtor has no equity interest in the property and the property is not necessary to

reorganization of the estate.  11 U.S.C. § 362(d)(2); *see also In re Elmira Litho, Inc.*, 174 B.R. at

900 (collecting cases) ("Sections 362(d)(1) and (d)(2) are disjunctive.  This means that the Court

must lift the stay if the movant prevails under either of the two grounds.")  A *prima facie* case

under 11 U.S.C. § 362(d)(2) requires a showing that the debtor has no equity in the property and

that the property is not necessary to the reorganization of the estate.  *See* 11 U.S.C. § 362(d)(2).

8

If a movant fails to demonstrate its *prima facie* case, the court must deny the request to lift the stay.  3 COLLIER ON BANKRUPTCY ¶ 362.10 (16th ed. 2016).  Once the creditor makes a *prima facie* case, the burden shifts to the debtor on all other issues.  *Elmira Litho*, 174 B.R. at 902; 3 COLLIER ON BANKRUPTCY ¶ 362.10.

## III.   DISCUSSION

### A.   The Debtor Has No Lease Interest in the Properties

Section 362(b)(10) and (22) of the Bankruptcy Code clearly apply in this case.  Before this bankruptcy case was filed, the Debtor agreed in two separate binding agreements that the leases (if any) expired before the commencement of the two bankruptcy cases.

The 78-80 Debtor was the Debtor's lessor under residential property leases and under nonresidential leases in relation to the Debtor's Companies.  (Motion ¶¶ 14, 19.)  The nonresidential and residential leases expired and terminated before the Petition Date.  (*Id.*)  The Forbearance Agreement and the Consent Order both obligated the Debtor and his businesses to vacate the Property under any and all leases.  (*Id.*)  The Opposition does not address leases and notes that the only tenant paying residential rent consistently has paid no commercial rent during the COVID-19 crisis.  (Opposition at 2.)  The Opposition otherwise does not respond to the Motion's statements that neither the Debtor nor his Companies have any valid residential or nonresidential leases with the 78-80 Debtor.

### B.   The Debtor Does Not Have Equity in the Property

A party can move to lift the automatic stay when a debtor has no equity interest in the property and the property is not necessary to reorganization of the estate.  11 U.S.C. § 362(d)(2).  A *prima facie* case under 11 U.S.C. § 362(d)(2) requires a showing that the debtor has no equity in the property and that the property is not necessary to the reorganization of the estate.

9

The Property is solely owned by the 78-80 Debtor.   Any and all leases of the Debtor relating to the Property expired before the Filing Date or were consensually terminated by final order before the Filing Date.  (Motion ¶ 37.)  The Opposition states that the Debtor "still has equity in the property," but does not provide facts to substantiate this claim.  (Opposition at 5.) The Opposition argues that there have been a range of independent appraisals which value the Property between $13,680,000 and $15,000,000, but the Opposition does not show that the Debtor himself possesses equity in the Property.  (*Id.*)  Additionally, those purported appraised values were substantially disputed at the time of the motion to appointment the chapter 11 Trustee.  (*See* Findings of Fact and Conclusions of Law ¶13.)  Despite Otway's assurances in opposing appointment of the chapter 11 case of the 78-80 Debtor that he would be able to arrange takeout financing to repay the Lender in full, he was never able to do so.

Because the Opposition does not address the 78-80 Trustee's statement that the Debtor does not have equity in the property, the 78-80 Trustee has satisfied its burden of making a *prima facie* showing under section 362(d)(2).

### C.    Relevant *Sonnax* Factors Weigh in Favor of Lifting the Stay

The Court reaches the same conclusion that the 78-80 Trustee's Motion makes a sufficient showing for relief from the automatic stay under section 362(d)(1) of the Bankruptcy Code.  The Motion substantively argues that the *Sonnax* factors weigh in favor of lifting the automatic stay because the Tenants' continued occupancy hinders the 78-80 Trustee's ability to sell the Property for its maximum benefit to the estate.  The Opposition does not substantively engage with the *Sonnax* factors, but argues that the twelfth factor (impact of the stay on the parties and the balance of harms) weighs in favor of denying the Motion because Mr. Otway will become homeless and impoverished if the Court lifts the stay.  (Opposition at 5-6.)

10

The Court does not need to consider all *Sonnax* Factors because not all are relevant in every case. *See In re M.J. & K Co., Inc.,* 161 B.R. 586 (Bankr.S.D.N.Y.1993); *In re Burger Boys, Inc.*, 183 B.R. at 688. Only the relevant factors need to be considered. *See In re Touloumis*, 170 B.R. at 828. On balance, and in light of the Opposition's failure to substantively engage with the *Sonnax* factors, the relevant *Sonnax* factors weigh in favor of lifting the stay.

<u>*Sonnax* Factor 1: Whether Relief Would Result in a Partial or Complete Resolution of the Issues</u>

The 78-80 Trustee's Proposed Complaint seeks the turnover of possession of the Property currently occupied by the Tenants. (*See* Proposed Complaint.) The Tenants remain in possession of the Property, despite the Forbearance Agreement and Consent Order resolving the State Court action, which each separately obligated the Tenants to completely vacate the property by December 30, 2021. (*Id.* ¶ 48.) As a result, the 78-80 Debtor, the sole owner of the Property, has not sold or refinanced the Property and also failed to meet its obligation under the Consent Order. (*Id.* ¶¶ 50, 67.)

Lifting the stay to allow the 78-80 Trustee to proceed with the proposed adversary proceeding will partially resolve the issue of the Tenants' continued occupancy of the Property. A judgment on the matter would be a meaningful step in the 78-80 Trustee's disposition of the property as part of the 78-80 Debtor's Chapter 7 bankruptcy liquidation. Accordingly, this factor weighs in favor of lifting the automatic stay.

<u>*Sonnax* Factor 2: Lack of Connection with or Interference with the Bankruptcy Case</u>

The Tenants' continued occupancy of the Property is connected to the 78-80 Trustee's inability to sell the Property for its maximum value and accord the greatest benefit to the estate. The Debtor and his Companies do not have any leases or contracts with the 78-80 Debtor because, prior to the Filing Date, the Debtor and his Companies agreed that any and all leases or

contracts expired, terminated on their own terms, or were terminated by the Forbearance

Agreement.  (Motion ¶ 34.)  As already discussed, the Consent Order further obligated the

Debtor and his Companies to vacate the Property at issue.  (*Id.*)

The Opposition does not engage with *Sonnax* factor 2, but separately submits that the

Debtor's and Debtor's Companies' continued occupancy protects the value of the Property.

(Opposition at 4.)  The Opposition argues that the Property would be at risk of vandalization if

the businesses occupying the Property closed and that this vandalization would result in

prospective buyers believing that the Property is in a "dangerous neighborhood and not worth its

value as a public business."  (*Id.*)

The Court finds this hypothetical scenario unconvincing, and the Opposition does not

advance a compelling argument that the Tenants' continued possession maintains a higher value

for the Property than if the 78-80 Trustee were able to manage the sale of the Property

unencumbered by unauthorized possession.  This factor weighs in favor of lifting the automatic

stay.

### *Sonnax* Factor 12: Impact of the Stay on the Parties and the Balance of Harms

The 78-80 Trustee asserts that the Debtor's continued occupancy of the Property

degrades the value of the Property given (a) the Debtor, as well as Eugenie Otway and the

Debtor's Companies, has not made any payment for such occupancy (Motion ¶ 35), and (b) the

Property is encumbered by, *inter alia*, a lien held by the Lender in the asserted amount of

$9,084,262.75 as of April 1, 2022, plus additional fees and expenses that continue to accrue, and

interest accruing on all of the foregoing at the rate of 24% per annum.  (*Id*. ¶¶ 37, 38.)  The 78-80

Trustee represents that these factors contribute to a quantitative decline in value of the property.

The Opposition cites numerous harms to the Debtor if the proposed adversary proceedings result in the turnover of possession of the property.  The Opposition submits that, if the stay remains in place, the Debtor and his businesses would be able to pay into a reorganization plan to pay creditors in installments after an eight-month period.  (Opposition at 5.)  The Opposition also argues that the Debtor will have the financial means to relocate if the Debtor is allowed to leave after the sale of the Property.  (*Id.*)  The Opposition repeatedly submits that the potential harms of lifting the stay include the Debtor's homelessness and poverty.  (*Id.*)

Homelessness is a significant harm to the Debtor, but the Opposition is without a concrete legal argument for allowing the Debtor, as well as the remaining parties as Tenants, to remain in possession of the property.  Additionally, the Debtor's proposed reorganization and relocation plans are for the Debtor's financial benefit and do not address the financial harm to the 78-80 Debtor's estate and potential Property value.  Ultimately this factor does not weigh heavily enough in the Debtor's favor to shift the entire *Sonnax* analysis, and the analysis as a whole weighs in favor of granting the 78-80 Trustee's Motion.

## IV. CONCLUSION

The Court **GRANTS** the Motion lifting the stay and **OVERRULES** the Debtor's Opposition.  Once the turnover action is filed and served, the Court expects to set an expedited schedule to address the request for relief sought by the 78-80 Trustee.

**IT IS SO ORDERED.**

Dated:    September 30, 2022
          New York, New York

*Martin Glenn*
_____
MARTIN GLENN
Chief United States Bankruptcy Judge